## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CYRIL C. ODOGWU, | : | CIVIL ACTION NO. **1:CV-10-2292** |
| Petitioner, | : | (Judge Conner) |
| v. | : | (Magistrate Judge Blewitt) |
| ERIC HOLDER, et al., | : | |
| Respondents. | : | |

## REPORT AND RECOMMENDATION

**I. Procedural History.**

On November 4, 2010, Petitioner, Cyril C. Odogwu, a detainee of the Bureau of Immigration and Customs Enforcement ("BICE") at the York County Prison ("YCP"), York, Pennsylvania, filed, *pro se*, this Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. (Doc. 1).[1] Petitioner attached exhibits to his habeas petition. Petitioner's motion to proceed *in forma pauperis* was denied. (Docs. 2 and 4).

On November 15, 2010, Petitioner paid the filing fee. (Doc. 5).

Named as Respondents are Mary Sabol, Warden at YCP, Eric Holder, U.S. Attorney General, Thomas Decker, BICE District Director, and Janet Napolitano, Secretary of Department of Homeland Security ("DHS"). (Doc. 1).[2]

On November 17, 2010, we issued an Order to Show Cause directing the Respondents to show cause as to why the Petitioner should not be granted habeas corpus

---

[1]As Petitioner recognizes (Doc. 1), this Court has venue and jurisdiction with respect to his habeas petition challenging his continued physical custody by BICE at YCP. *See Rumsfeld v. Padilla*, 542 U.S. 426, 447 (2004) (finding that a petition pursuant to 28 U.S.C. § 2241 challenging an alien's present physical custody in the United States should be filed in the district where the petitioner is confined).

[2]Warden Sabol is the only proper Respondent with respect to Petitioner's habeas petition. *See* 28 U.S.C. §§ 2242 and 2243. *See also Jado v. Decker*, 2009 WL 1456595, *1, n. 1 (M.D. Pa.)("The only properly named Respondent in a federal habeas corpus action is the applicant's custodial official.").

-1-

relief. (Doc. 6).

On December 7, 2010, the Respondents filed their response to the habeas petition with attached exhibits, Exs. A-O. (Doc. 10). On December 16, 2010, Petitioner filed a Traverse with attached exhibits. (Doc. 12). The petition is ripe for disposition.

On January 28, 2011, Petitioner filed a Motion to Expedite his habeas petition stating that he has been unlawfully detained for 270 days by BICE and, that BICE has not been able to effectuate his removal from the United States. (Doc. 13). Petitioner filed a second Motion to Expedite Process on February 2, 2011, seeking the Court to immediately rule on his habeas petition. (Doc. 14).

For the reasons set forth below, we will recommend that Petitioner's habeas petition be denied. However, we will recommend that Petitioner be given another custody review within the next 30 days.

**II. Background.**

Petitioner states that he has been detained by BICE since April 29, 2010. (Doc. 1, p. 5, ¶ 6.). The record substantiates this fact. (Doc. 10, Exs. A, I and J). At the time of filing his habeas petition, Petitioner was detained by BICE continuously over seven and one-half (7 ½) months, and he is still currently being detained by BICE at YCP, a total of about 9 and one-half (9 ½) months. (*See* Doc. 10).

Petitioner is a native and citizen of Nigeria. (Doc. 1). He was admitted to the United States on or about January 9, 1998, as a B-2 visitor for pleasure with authorization to temporarily remain in the United States for a period of time not to exceed six months. (Doc. 10, Ex. A). On November 4, 1998, an Immigration Judge granted Petitioner voluntary departure. (*See* Doc. 10, Ex. C, p. 1). The DHS granted Petitioner an extension of voluntary departure until May 4, 1999. (*Id.*).

Petitioner failed to depart the United States by May 4, 1999. (*Id.*). Petitioner was then taken into custody and he filed a motion to reopen his case so that he could apply for adjustment of status. (*Id.*). On May 23, 2001, an Immigration Judge ("IJ") granted Petitioner's motion to reopen. (*Id*. and Doc. 10, Ex. D). On June 6, 2001, the IJ granted a

motion to change venue and transferred the venue of Petitioner's case to the Baltimore Immigration Court. (Doc. 10, Ex. E).

On December 23, 2002, DHS filed a Motion to Pretermit Petitioner's application for relief of removal. (Doc. 10, Ex. C, p. 1). Petitioner failed to timely respond to DHS's motion, and on January 7, 2003, the motion was granted. (*Id*. and Ex. F). The IJ determined that in light of INS evidence, Petitioner was ineligible for voluntary departure because he had violated a previous departure order. (Doc. 10, Ex. C and Ex. F). Thus, the IJ ordered Petitioner removed to Nigeria. (*Id*., Ex. F).

Petitioner appealed the IJ's January 7, 2003 Order to the the Board of Immigration Appeals ("BIA"). (*Id*., Ex. C). On October 27, 2005, the BIA dismissed Petitioner's appeal and Petitioner was ordered deported under INA Section 237(a)(1)(B). (*Id*. and Doc. 10, Ex. A at 2). Petitioner did not comply with the deportation order, and he became an ICE fugitive. (Doc. 10, Ex. A). On June 22, 2007, pursuant to a final removal order by the BIA, a Warrant of Removal/Deportation was issued against Petitioner. (Doc. 10, Ex. O).

On January 6, 2010, an Arrest Warrant was issued for Petitioner Odogwu in the Middle District of Pennsylvania for Theft Concerning Program Receiving Federal Funds, in violation of 18 U.S.C. § 666(a)(1)(A). (Doc. 10, Ex. G, 10-CR-4, M.D. Pa.). On January 8, 2010, a United States Postal Inspector contacted ICE about a possible outstanding warrant for Petitioner. (Doc. 10, Ex. A, p. 2). On January 12, 2010, an Immigration Enforcement Agent encountered Petitioner at the Dauphin County Prison, Harrisburg, Pennsylvania. (*Id.*). On January 15, 2010, a Warrant for Arrest of Alien (Doc. 10, Ex. I) and a Notice of Custody Determination (Doc. 10, Ex. J) were issued against Petitioner by DHS. Petitioner was notified that he was to be detained in DHS custody pending a final determination by the IJ. These documents were served upon Petitioner on April 30, 2010, at YCP. *(Id.)*.

Petitioner pled guilty in the Middle District of Pennsylvania to the federal theft charge. On April 27, 2010, he received a sentence of time served, plus an assessment and restitution totaling $7,094.22. (Doc. 10, Ex. H). On May 5, 2010, a Warrant of

Removal/Deportation was issued by Respondent Decker against Petitioner. (Doc. 10, Ex. K).[3]

On May 6, 2010, ICE served Petitioner with a Notice of Custody Review advising him that his custody status would be reviewed on or about July 19, 2010. (Doc. 10, Ex. L).

On August 6, 2010, Respondent Decker of ICE issued Petitioner Odogwu a Decision to Continue Detention. Petitioner was notified that his custody status had been reviewed and it was determined that he would remain in ICE custody pending his removal from the United States. (Doc. 10, Ex. M). Petitioner was advised as follows by Decker:

> You were taken into ICE custody on April 29, 2010. You were convicted of Theft Concerning Programs Receiving Federal Funds on June 10, 2010, in the United States District Court, Middle District of PA. A travel document request was submitted to the Consulate of Nigeria which provides sufficient evidence to prove your Nigerian citizenship and nationality, therefore ICE is actively pursuing your travel document.

(*Id.*, p. 1).

Petitioner was further advised that if he was not released or removed by October 26, 2010, jurisdiction of the custody decision in his case would be transferred to the Headquarters Case Management Unit ("HQCMU") for a final determination regarding his custody. (*Id.* at 2).

Petitioner Odogwu's case was transferred to the HQCMU on October 29, 2010. (Doc. 10, Ex. N). On November 10, 2010, Petitioner was notified that another Decision to Continue Detention was issued and, that ICE had again reviewed his custody status and determined that his detention would continue pending his removal. (Doc. 10, Ex. B). Petitioner was further advised:

> A request for a travel document was submitted to the Embassy of Nigeria and ICE is currently working with the government of Nigeria in securing a travel document for your removal from the United States. There is no reason to believe at this time that your removal will not take place within the reasonably foreseeable future.

(*Id.*).

---

[3]In Respondents' Response (Doc. 10, p. 5), they incorrectly indicate that the May 5, 2010 Warrant of Removal/Deportation issued against Petitioner is Ex. I to Doc. 10. It is Ex. K to Doc. 10.

> Petitioner was also advised as follows:
>
> > This decision, however, does not preclude you from bringing forth evidence in the future to demonstrate a good reason why your removal is unlikely. You are advised that pursuant to Section 241(a)(1)(C) of the Immigration and Nationality Act (INA) you must demonstrate that you are making reasonable efforts to comply with the order of removal, and that you are cooperating with ICE efforts to remove you by taking whatever actions ICE requests to effect your removal.

(*Id*.).

### III. Claims of Habeas Petition.

Petitioner claims that because he was ordered to be removed to Nigeria on May 6, 2010, "his continued detention by Respondents is indeed over the 90 day removal period, the extended 180 day period, and there is no significant likelihood of his removal in the foreseeable future." (Doc. 1). As a further challenge to his continued detention by BICE, Petitioner alleges that "his deportation *cannot be* carried out to his country of citizenship, Nigeria. The Nigerian Consulate refuses to issue Petitioner travel documents." (Doc. 1). He claims that his continued detention is unconstitutional and he cites to *Zadvydas v. Davis*, 533 U.S. 678 (2001). (*Id*.). Petitioner also argues that his continued detention, without a meaningful custody review, violates his right of substantive due process and procedural due process. (*Id*.). Additionally, Plaintiff claims that BICE officials who made the decisions regarding his continued detention were not neutral and impartial, and that they failed to respond to his administrative request for release.

Further, Petitioner states that after his case was transferred to HQCMU, he has not received any correspondence from it regrading his continued detention or to request his assistance in procuring travel documents from Nigeria.

As relief, Petitioner requests that this Court to order Respondents to immediately release him from custody. He also requests that the Court issue a preliminary and permanent injunction barring the Respondents from further unlawful detention of the Petitioner. (Doc. 1, pp. 23-24).

For the reasons stated below, we will recommend that the petition for a Writ of Habeas Corpus be denied and order that the Respondents conduct a custody review within the next thirty (30) days.

**IV. Discussion.**

Petitioner was taken into BICE custody on April 29, 2010, and he has continuously remained at YCP to the present day. It is not disputed that the final removal order was issued against Petitioner on January 22, 2007. (Doc. 10, p. 7 and Ex. O). However, Petitioner remained a BICE fugitive until he was found January 12, 2010 at Dauphin County Prison. (Doc. 10, Ex. A, p. 2). In Immigration detainer was lodged against him on January 15, 2010 (Doc. 10, Ex. I), but he was not physically transferred into ICE custody pursuant to the detainer until completion of his federal criminal prosecution and sentence in M.D. Pa. on April 29, 2010. On April 29, 2010, BICE detained Petitioner at YCP and he has remained at YCP to the present day.

In *Akinsehinwa v. Donate*, 2008 WL 2951072, *3 (M.D. Pa.), the Court stated:

> Detention, release, and removal of aliens ordered removed is governed by § 241 of the Act, 8 U.S.C. § 1231, as amended. Under § 1231(a), the Attorney General has ninety days to remove an alien from the United States after his order of removal, during which time detention is mandatory.
> The removal period under section 1231 begins on the latest of (1) the date the order of removal becomes administratively final; (2) if the removal order is judicially reviewed and if a court orders a stay of the alien's removal, the date of the court's final order; and (3) **if the alien is confined (except under an immigration process), the date the alien is released from confinement.** 8 U.S.C. § 1231(a)(1)(B).

(emphasis added). *See also Hossain v. Sabol*, 2010 WL 378515 (M.D. Pa.); *Crisostomos v. DHS*, Civil No. 10-0789, M.D. Pa.; *Rodney v. Lowe*, 2010 WL 1779895, *3 (M.D. Pa. 4-30-10)("Detention, release, and removal of aliens ordered removed is governed by the provisions of 8 U.S.C. § 1231.).

Thus, we consider April 29, 2010, the date Petitioner completed his Middle District of Pennsylvania federal sentence, to be the start of his removal period. 8 U.S.C. § 1231(a)(1)(B)(iii).

It is clear that Petitioner's presumptive six-month period has expired since the start of his removal period on April 29, 2010. Also, it is undisputed that Petitioner has now been detained by BICE for approximately eight months and that his last custody review by HQCMU was approximately three months ago, *i.e.* on November 10, 2010. (Doc. 10, Ex. B).

Petitioner claims that his continued indefinite detention at YCP, after his 6-month presumptive removal period has expired, is unconstitutional under *Zadvydas,* and that it violates his due process rights since there is not a reasonable likelihood that he will be removed to Nigeria in the foreseeable future.

In their Response, the Respondents argue that the Petitioner's detention is constitutional because he failed to establish that his removal is not reasonably foreseeable. They state that even if Petitioner has met his initial burden under *Zadvydas*, there is reason to believe that his removal is likely in the reasonably foreseeable future. Respondents also state that Petitioner has received and is receiving all due process to which he is entitled while in BICE detention. (Doc. 10). Respondents state that Petitioner's detention is permissible under *Zadvydas,* and indicate that the expiration of the presumptively reasonable period does not necessitate the release of Petitioner. They argue that the mere passage of time is insufficient to establish a constitutional violation and that the Petitioner has not established that Nigeria has denied him as a citizen or that Nigeria will refuse to issue a travel document for him in the near future. (Doc. 10).

In his Reply to the Respondents' Response, the Petitioner refutes Respondents' contention that his deportation to Nigeria is likely to occur within the reasonably foreseeable future, and reiterates his claims under *Zadvydas*. (Doc. 12). The Petitioner also reasserts his argument that the Respondents have provided no specific information as to how and when travel documents can be obtained for him or when these documents might be issued, and that thus his removal is not reasonably foreseeable. The Petitioner states, "[t]he substantial likelihood of Petitioner's removal that the respondents attempted to establish is based solely on a travel documents request submitted to the Nigerian government over eight months ago.

Respondent has had no success in procuring these documents despite their good faith efforts and Petitioner's full cooperation to date. Respondents has (sic) offered no evidence to suggest a likelihood of success in the procurement of these documents in the reasonably foreseeable future." (Doc. 12, p. 3, "Conclusion").

As mentioned, there is no dispute that a final removal order has been issued in Petitioner's case and that he has now been detained in BICE custody after his six-month presumptive removal period has expired. However, we agree with Respondents (Doc. 10) that simply because Petitioner's presumptive six-month period has expired, he is not automatically entitled to be released on supervision while he awaits his removal to Nigeria.

Once an alien is ordered removed by BICE, the Attorney General has ninety (90) days to effectuate the removal of the alien. This is called the removal period. 8 U.S.C. § 1231 (a)(1)(A). Under the statute:

(B) The removal period begins on the latest of the following:

(i) **The date the order of removal becomes administratively final.**

(ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
(iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B) (Emphasis added).[4] *See French v. Ashcroft*, 2005 WL 1309062 at *2 (M.D. Pa.); *Jurado-Delgado v. Hogan*, 2007 WL 1490717, *3 (M.D. Pa.).

In *Zadvydas*, 533 U.S. at 689, the Court held that "the statute [§241 (a)(6)], read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States. It does not permit indefinite detention." *Id.* at 689. "At the conclusion of the removal period, if the alien remains in the United States, his post-removal-period detention may

---

[4]During the removal period, the Attorney General must detain the alien. 8 U.S.C. § 1231(a)(2). If the alien is not removed during the removal period, the Attorney General has two options -- supervised release (8 U.S.C. §§ 1231(a)(3)) or, at times, continued detention (8 U.S.C. §1231(a)(6)).

be continued only as long as 'reasonably necessary' to effectuate his removal from the United states." *Jurado-Delgado v. Hogan*, 2007 WL 1490717, *3 (citing *Zadvydas*, 533 U.S. at 689).

In *Rodney v. Mukasey*, 2009 WL 2430885, *3 (3d Cir.), the Third Circuit stated:

> The Attorney General has 90 days to remove Rodney from the United States after his final order of removal. 8 U.S.C. § 1231(a)(1)(A). However, in *Zadvydas,* 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed.2d 653, the Supreme Court interpreted 8 U.S.C. § 1231(a)(6) to authorize post-removal order detention of an alien convicted of an aggravated felony to a period reasonably necessary to bring about the alien's removal, generally no more than six months. *Id.* at 700-01.FN4 After six months, the alien is eligible for conditional release if he can demonstrate that there is "no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701. "This 6-month presumption, of course, does not mean that every alien not removed must be released after six months." *Id.*
>
> FN4. The statute provides: "An alien ordered removed who is ... removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title ... may be detained beyond the removal period...." 8 U.S.C. § 1231(a)(6).

In response to *Zadvydas,* BICE adopted 8 C.F.R. § 241.4(k), which provides that prior to the expiration of the ninety (90) day removal period, the appropriate BICE district director shall conduct a custody review for aliens who cannot be removed during the prescribed period and make a determination as to whether the detainee should be released pending removal. When release is denied, the district director may retain responsibility for the alien up to three months or refer the alien to BICE's Headquarters Post-order Detention Unit (HQPDU).

In the present case, as stated, Respondent Decker conducted a custody review of Petitioner and determined that he should remain in custody. (Doc. 10, Ex. M). Subsequently, Petitioner's case was transferred to HQCMU.

Special review procedures apply following the transfer of an alien's case to the HQPDU. *See* 8 C.F.R. § 241.13. Specifically, an eligible alien may make a written request for release to the HQPDU "asserting the basis for the alien's belief that there is no significant likelihood that the alien will be removed in the reasonably foreseeable future to the country to which the alien was ordered removed and there is no third country

willing to accept the alien." 8 C.F.R. § 241.13(d)(1).

Within ten (10) business days of receipt of the request, the HQPDU must provide the alien with a written response acknowledging receipt of his request and explaining the procedures that will be used to evaluate the request. 8 C.F.R. § 241.13(e)(1). The HQPDU may grant an interview to the alien if such an interview would "provide assistance in rendering a decision." 8 C.F.R. § 241.13(e)(5). The factors that the HQPDU must consider include: the history of the alien's efforts to comply with the order of removal, the history of the Service's efforts to remove aliens to the country in question or to third countries, including the ongoing nature of the Service's efforts to remove this alien and the alien's assistance with those efforts, the reasonably foreseeable results of those efforts, the views of the Department of State regarding the prospects for removal of aliens to the country or countries in question, and the receiving country's willingness to accept the alien into its territory. 8 C.F.R. § 241.13(f). The Regulation further provides that the "HQPDU shall issue a written decision based on the administrative record, including any documentation provided by the alien, regarding the likelihood of removal and whether there is a significant likelihood that the alien will be removed in the reasonably foreseeable future under the circumstances. The HQPDU shall provide the decision to the alien, with a copy to counsel of record, by regular mail." 8 C.F.R. § 241.13(g).

As stated, on November 10, 2010, HQCMU made a decision to continue Petitioner detention pending his removal. (Doc. 10, Ex. B).

In the present case, based on the record detailed above, we find no violation of *Zadvydas*. Petitioner is subject to a final removal order. Although the six-month presumptive period has passed and his detention has continued about eight months, the Petitioner is not automatically entitled to be released. See *Zadvydas*, 533 U.S. at 701. As Respondents point out, Petitioner fails to provide any evidence that Nigeria has denied him as a citizen or that Nigeria will refuse to issue the appropriate travel documentation for him.

The Petitioner claims that the mere request by BICE for travel documents from Nigeria does not guarantee his removal to that country in the reasonably foreseeable future.

However, the burden is on the alien "to provide [ ] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future...." *Barenboy v. Attorney General of U.S.*, 160 Fed. Appx. 258, 261 (3d Cir. 2005)(citing *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001). Once the alien meets this burden, the burden shifts to the government which must respond with sufficient evidence to rebut that showing. *Id*. "Not every alien must be released after six months. An alien may still be detained beyond six months 'until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.'" *Peynado v. BICE*, 2009 WL 136749, *3 (M.D. Pa.)(citation omitted).

If the Petitioner believes he is unlikely to be removed in the near future, he may request that the Department of Homeland Security review his case. *See* 8 C.F.R. § 241.13. He may also file another habeas petition if he can show that his removal to Nigeria is not likely to occur in the reasonably foreseeable future. At the present time, we agree with Respondents and find that Petitioner has not presented any evidence to demonstrate a good reason why his removal is unlikely to occur in the reasonably foreseeable future or that Nigeria will not issue travel documents for him.

We thus find that Petitioner can submit a request for release with BICE under 8 C.F.R. § 241.13, *et seq.,* since his six-month presumptively reasonable removal period has expired.[5] *Peynado v. BICE*, 2009 WL 136749, *3 . Thus, we find that Petitioner's recourse is to submit a request for release with BICE under § 241.13, *et seq. See French v. Ashcroft,* 2005 WL 1309062 (M.D. Pa.)*; Jado, supra; Peynado v. BICE*, 2009 WL 136749, *3. Petitioner will have the opportunity to provide any evidence to support his claim that his removal to Nigeria will not likely occur in the foreseeable future and that Nigeria will not

---

[5] Section 241.13 sets forth procedures for determining whether there is a significant likelihood of removing a detained alien, subject to a final order of removal, in the reasonably foreseeable future. The alien must submit a written request for release with the BICE asserting the basis for his belief that there is no significant likelihood of his removal. 8 C.F.R. § 241.13 (d)(1).

issue him travel documents anytime soon.

As the Court stated in *Van v. BICE*, 2007 WL 1703415, *2 (M.D. Pa. 2007):

> Following *Zadvydas*, regulations were promulgated to meet the criteria established by the Supreme Court. *See* 8 C.F.R. § 241.4. Prior to the expiration of the mandatory ninety day removal period, the district director shall conduct a custody review for an alien where the alien's removal cannot be accomplished during the prescribed period. 8 C.F.R. § 241.4(k)(1)(i). When release is denied pending the removal, the district director may retain responsibility for custody determinations for up to three months, or refer the alien to the Headquarters Post Order Detention Unit ("HQPDU") for further custody review. 8 C.F.R. § 241.4(k)(1)(ii). Once jurisdiction is transferred, an eligible alien may submit a written request for release to the HQPDU asserting the basis for the aliens' belief that there is no significant likelihood that he will be removed in the reasonably foreseeable future. 8 C.F.R. § 241.13(d)(1).

*See also Hussain v. Sabol*, 2010 WL 378515, *3 (M.D. Pa.).

Therefore, we will recommend that Petitioner's habeas petition be denied with respect to his *Zadvydas* claim.

*2. Due Process Claims*

In *Walton v. Sabol*, 2009 WL 2568048, *4 (M.D. Pa.), the Court indicated as follows:

> In *Zadvydas,* the Supreme Court considered a due process challenge to 8 U.S.C. § 1231, which governs detention of aliens following a final order of removal. Under § 1231(a), the Attorney General has ninety days to remove an alien from the United States after his order of removal, during which time detention is mandatory. The statute "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States. It does not permit indefinite detention." *Zadvydas,* 533 U.S. at 689. "[Once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699. To establish uniformity in the federal courts, a period of six months was recognized as a "presumptively reasonable period of detention." *Id.* at 701. If at the conclusion of the six month period the alien provides good reason to believe that there is no significant likelihood of deportation in the reasonably foreseeable future, the burden shifts to the government to "respond with evidence sufficient to rebut that showing." *Id.* Not every alien must be released after six months. An alien may still be detained beyond six months "until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*

Petitioner admits, and Respondents' exhibit shows (Doc. 10, Ex. B) that he received a custody review by HQCMU on November 10, 2010. There has not been any evidence submitted by Petitioner to show that this custody review was not meaningful or that it failed to

-12-

meet due process requirements.  Thus, less than three months have passed since Petitioner's last custody review.  We find that the record shows Petitioner has been receiving meaningful custody reviews during his continued detention at YCP.   (Doc. 10, Exs. B and M).

As mentioned, the Petitioner has not submitted any evidence to support his stated due process claims.  The evidence shows that HQCMU's November 10,2 010 Decision to Continue the Detention of Petitioner was not arbitrary and capricious.  However, since Petitioner's last custody review was about 3 months ago, we will recommend that the District Court direct BICE to schedule another custody review for Petitioner within **thirty (30)** days and to give prior notice of the custody review  to Petitioner.  Thus, Petitioner will receive another custody review in about one month, mid-March 2011.  At that time, the Petitioner can present any evidence he has to support his release from custody and to show that his removal to Nigeria is not likely to occur in the reasonably foreseeable future.   Petitioner will also be able to present any evidence he has to dispute the government's finding that it expects to obtain a travel document for him and that his removal to Nigeria will occur in the reasonably foreseeable future.

**V. Recommendation.**

Based on the foregoing, it is respectfully recommended that Petitioner's Habeas Petition, to the extent that it challenges his continued detention as unconstitutional (*i.e.* Z*advydas* claim), be denied.  It is also recommended that Petitioner's due process claims be denied.  Further, it is  recommended that BICE be directed to schedule another custody review for Petitioner within **thirty (30) days,** and that BICE be directed to provide Petitioner with advance notice of it.

                             **s/ Thomas M. Blewitt**
                             **THOMAS M. BLEWITT**
                             **United States Magistrate Judge**

**Dated: February 14, 2011**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CYRIL C. ODOGWU, | : | CIVIL ACTION NO. **1:CV-10-2292** |
| Petitioner, | : | |
| | : | (Judge Conner) |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| ERIC HOLDER, et al., | : | |
| Respondents. | : | |

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **February 14, 2011.**

Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the

magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

                                              s/ Thomas M. Blewitt
                                              **THOMAS M. BLEWITT**
                                              **United States Magistrate Judge**

**Dated: February 14, 2011**